**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3379
_____

FEDERAL TRADE COMMISSION,
Appellant

v.

INNOVATIVE DESIGNS, INC.
_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-16-cv-001669)
District Judge:  Honorable Nora B. Fischer
_____

Argued July 8, 2021
_____

Before: SHWARTZ, KRAUSE, and RENDELL, <u>Circuit Judges</u>

(Filed:  July 22, 2021)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Imad D. Abyad [ARGUED]
Katherine Johnson
Omolara B. Joseney
Alejandro G. Rosenberg
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, DC 20580

      Counsel for Appellant

Anthony E. Patterson [ARGUED]
Anthony E. Patterson & Associates
304 Ross Street
Suite 505
Pittsburgh, PA 15219

      Counsel for Appellee

SHWARTZ, Circuit Judge.

The Federal Trade Commission ("FTC") sued Innovative Designs, Inc. ("IDI") under Section 5(a) of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45(a), alleging that IDI made misrepresentations about its house wrap product. Because the FTC failed to prove that IDI's claims were false or unsubstantiated, the District Court correctly granted IDI's motion for judgment on partial findings, and we will therefore affirm.

I

A[1]

---

[1] The facts are based on the parties' joint stipulations and evidence admitted at trial.

IDI manufactures and sells Insultex House Wrap, a weather-resistant barrier used in building construction. IDI's advertisements include Insultex's R-value, a numeric measure of the product's ability to restrict the flow of heat. The higher the R-value, the better the product's insulating ability. One way to determine a product's R-value is to use testing approved by the American Society for Testing and Materials ("ASTM").[2] The standard test for insulation is set forth in ASTM C518. See 16 C.F.R. § 460.5(a).

IDI advertises that ASTM C518 testing revealed that Insultex has an R-value of either R-3 or R-6, but "standard" ASTM C518 testing conducted on Insultex has not yielded those results. Instead, IDI's claimed R-values derive from "modified" ASTM C518 testing conducted by BRC Laboratory, Inc. ("BRC"). BRC's testing unit is "modified" because it has ¾-inch air gaps built into the sides of the unit. BRC provided IDI with Certificates of Analysis documenting the test results and noting that the test material was "prepared and analyzed as outlined in," among other things, "ASTM Guidelines." App. 599, 603. IDI also advertises that Insultex provides energy savings to its users based upon its claimed R-values, but it has conducted no energy savings studies.

---

[2] ASTM is a Pennsylvania nonprofit corporation that "provide[s] a forum for volunteer technical experts to develop and publish standards for materials, products, systems, and services." Am. Soc'y for Testing & Materials v. Corrpro Cos., Inc., 478 F.3d 557, 559 (3d Cir. 2007). "ASTM also develops methods for testing different properties and materials." Id. Its members include "individuals from academic institutions, government agencies, consulting groups, testing laboratories, and private corporations." Id. Its numerous "technical committees . . . develop[] standards," and its board "governs the standard-setting process." Id.

B

The FTC sued IDI under 15 U.S.C. § 53(b),[3] seeking permanent injunctive relief and other equitable remedies because IDI's promotion of Insultex allegedly violated 15 U.S.C. § 45(a). The FTC asserted three counts, specifically that (1) IDI's representations about Insultex's R-values, and hence its performance, were false or unsubstantiated since IDI did not use the standard ASTM C518 test to yield its purported R-values; (2) the represented R-values were false since standard ASTM C518 testing did not yield IDI's claimed results and thus its claims were not established; and (3) IDI's promotional materials, which allegedly contained false or misleading representations, were the means and instrumentalities constituting deceptive acts affecting commerce.

In a pretrial ruling, the District Court held that R-value testing results could be admitted only with expert testimony explaining them. In response, the FTC represented that expert Dr. David Yarbrough would testify about the test results.

Dr. Yarbrough was the FTC's only trial witness. Following his testimony, the FTC rested its case and IDI moved to exclude or strike portions of the testimony. The District Court granted IDI's motion to strike, finding that Dr. Yarbrough's opinions were not reliable or fit pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). See FTC v. Innovative Designs, Inc., No. 2:16-cv-01669-NBF, 2020 WL 758727, at *1, 10-11, 14-15 (W.D. Pa. Feb. 14, 2020).

---

[3] Title 15 U.S.C. § 53(b) permits the FTC to sue any corporation or entity in a United States District Court to enjoin its trade practices if the FTC believes that the corporation "is violating . . . any provision of law enforced by [the FTC]" and that "the enjoining thereof . . . would be in the interest of the public."

4

The District Court then granted IDI's motion for judgment on partial findings. See FTC v. Innovative Designs, Inc., 489 F. Supp. 3d 378, 402 (W.D. Pa. 2020). The Court explained that: (1) the FTC's experts were not reliable or credible, id. at 398-400; (2) the FTC did not produce expert testimony showing that BRC's testing did not conform with the ASTM C518 standard, id. at 400; (3) without expert testimony, the Court could not evaluate the testing, id.; and (4) the FTC produced no evidence showing that IDI's advertisements were false, id. at 398.

The District Court also concluded that: (1) the FTC failed to demonstrate that IDI's substantiation lacked a reasonable basis, id. at 402; (2) the FTC did not demonstrate that IDI lacked substantiation for its energy saving claims because the FTC did not rebut IDI's substantiation representations concerning its R-values or explain why it was improper for IDI to rely on the Federal Register statement that a high R-value leads to energy savings, id. (citing 70 Fed. Reg. 31258 (2005)[4]); and (3) because the FTC failed to establish that IDI's representations were misleading, its means and instrumentalities count also failed, id.

The FTC appeals.[5]

---

[4] That statement, from an FTC notice of final rulemaking, provides that "R-value is the numerical measure of the ability of an insulation product to restrict the flow of heat and, therefore, to reduce energy costs." 70 Fed. Reg. 31258.

[5] Because the FTC presented no arguments challenging the order striking Dr. Yarbrough's opinions relating to the R-value of Insultex, it has waived any appeal of that order. See United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005).

## II[6]

### A

The District Court properly granted IDI's motion for judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c). That Rule provides:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim . . . that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 52(c). "In considering whether to grant judgment under Rule 52(c), the district court applies the same standard of proof and weighs the same evidence as it would at the conclusion of the trial," so "the court does not view the evidence through a particular lens or draw inferences favorable to either party." EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 272 (3d Cir. 2010) (citation omitted). "[I]f the district court's account of the evidence is plausible in light of the record viewed in its entirety," we will affirm, "even if we would have weighed that evidence differently." Id. at 273 (quotation marks and citation omitted).

### B

#### 1

We first identify the FTC's theory of liability. The FTC did not sue IDI for violating a specific regulation regarding how R-value testing is to be performed. At the

---

[6] The District Court had jurisdiction pursuant to 15 U.S.C. § 45 and 28 U.S.C. §§ 1331, 1337(a), and 1345. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's factual findings for clear error and its legal conclusions de novo. EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 273 (3d Cir. 2010).

time IDI made its advertising claims, Section 460.5 provided that R-values in labels and promotional materials "must be based on tests done under the methods listed below." 16 C.F.R. § 460.5 (2005). Subsection (a) stated one of those methods is "ASTM C 518[]," and that such a test "must be done on the insulation material alone (excluding any airspace)."[7] Id. § 460.5(a) (2005). Subsection (e) incorporated the ASTM standard into the regulation. Id. § 460.5(e) (2005). ASTM C518 provided that "[s]tandardization of [the ASTM C518] test method is not intended to restrict in any way the future development of improved or new methods or procedures by research workers." App. 566.

The FTC does not dispute that a modified test may be used. Nor does the FTC assert that IDI "br[oke] any of [the Act's] rules," which itself can constitute a deceptive act or practice under the FTCA.[8] 16 C.F.R. § 460.1 (2005). Rather, the FTC argues that IDI's admission that a standard ASTM C518 test never returned the purported R-values

---

[7] The version of ASTM C518 in effect at the time the FTC filed its complaint in this case was ASTM C518-15, with the "15" referring to the year the version in effect was approved. The current version of Section 460.5, effective in 2020, refers to ASTM C518-17. This difference has no impact on our ruling.

[8] The FTC does not base any of its claims on the fact that the modified testing used air gaps or allege that IDI's R-values violated 16 C.F.R. § 460.5. Moreover, at trial, the FTC admitted that its issue with IDI's testing methods was not "about whether [the testing] can add air gaps or add layers or stack or sandwich," since "[a]ll of those things are acceptable alterations of the parameters of the test method if you understand what you are doing and how to interpret the results." App. 499. This admission indicates not only that the FTC's theory of liability is not premised on the air gaps used in BRC's modified testing, but also that a test's use of air gaps does not constitute a per se violation of the FTCA.

7

establishes that IDI's claims about its test results are false and that IDI did not adequately substantiate its R-value claims.

2

We next examine what the FTC must prove under the substantiation theory of liability. When the FTC brings a deceptive advertising claim based on the theory that the advertiser lacked substantiation, that is, a reasonable basis for its claim, the FTC must show the claim was material, POM Wonderful, LLC v. FTC, 777 F.3d 478, 490 (D.C. Cir. 2015), and must also "(1) demonstrate what evidence would in fact establish such a claim in the relevant scientific community; and (2) compare [] the advertisers' substantiation evidence to that required by the scientific community to see if the claims have been established," FTC v. Direct Mktg. Concepts, Inc., 624 F.3d 1, 8 (1st Cir. 2010) (alteration in original) (quotation marks and citation omitted); see also POM Wonderful, 777 F.3d at 491 ("The Commission . . . determines what evidence would in fact establish such a claim in the relevant scientific community and then compares the advertisers' substantiation evidence to that required by the scientific community." (quotation marks and citation omitted)); FTC v. Pantron I Corp., 33 F.3d 1088, 1096 (9th Cir. 1994) ("In determining whether an advertiser has satisfied the reasonable basis requirement, the . . . court must first determine what level of substantiation the advertiser is required to have for his advertising claims. Then, the adjudicator must determine whether the advertiser possessed that level of substantiation."). Therefore, to prevail, the FTC must identify the evidence that the advertiser should have to support its claim in the relevant scientific community, see POM Wonderful, 777 F.3d at 491, and then prove that the substantiation

8

evidence the advertiser claims to possess would not satisfy the relevant scientific community, see Direct Mktg. Concepts, 624 F.3d at 10.  If an advertising claim "states a specific type of substantiation," as some of IDI's claims at issue here, the "advertiser must possess the specific substantiation claimed."  POM Wonderful, 777 F.3d at 491 (quoting Removatron Int'l Corp. v. FTC, 884 F.3d 1489, 1492 n.3 (1st Cir. 1989)). "Where the advertiser[] lack[s] adequate substantiation evidence, [it] necessarily lack[s] any reasonable basis for [its] claims," and therefore its "ads are deceptive as a matter of law."  Direct Mktg. Concepts, 624 F.3d at 8.

The FTC's substantiation theory has two components.  First, the FTC asserts that IDI lacked substantiation because it did not conduct a standard ASTM C518 test and did not disclose that it used a modified test.  The FTC, however, failed to prove that use of a modified ASTM test is not ASTM C518 testing.  ASTM C518 sets forth a standard test and explicitly contemplates that variations of the standard method may be acceptable. Moreover, the FTC concedes that alternative tests, including those with air gaps, are not barred by ASTM C518.[9]  Thus, modified testing, including tests with air gaps, is captured within ASTM C518 and the use of such testing could provide substantiation that satisfies ASTM C518.  If the FTC took the position that consumers confronted with IDI's representations that it tested the product "as outlined in . . . ASTM Guidelines," App.

_____

[9] At argument, the FTC asserted that the modification-permitting language of the ASTM Guidance was intended to cover future standards developed by "standard-setting bodies" and "research workers," not any modifications that "individual marketers" might wish to make.  Oral Arg. 45:27-45:37, July 8, 2021.  That may well be the case, but the FTC has not met its burden of proof in that respect.

9

599, understood them to mean standard ASTM C518 and not modified ASTM C518, the FTC would have the burden to prove those claims had the capacity or tendency to cause such a misunderstanding. See Am. Home Prods. Corp. v. FTC, 695 F.2d 681, 687 n.10 (3d Cir. 1982). In the absence of expert testimony or even lay testimony, for that matter, the FTC cannot carry this burden.

Second, the FTC asserts that IDI failed to prove that the relevant scientific community would accept the use of the modified test, which yielded R-values of R-3 and R-6, as constituting adequate substantiation evidence. That argument conflates the FTC's burden to "compare [IDI's] substantiation evidence to that required by the scientific community," with IDI's obligation only to "possess evidence sufficient to satisfy the relevant scientific community of the claim's truth." POM Wonderful, 777 F.3d at 491 (quotation marks and citation omitted). In other words, the FTC had the burden to show IDI's substantiation evidence would not satisfy the relevant scientific community. See Direct Mktg. Concepts, 624 F.3d at 10-11 (concluding that the FTC carried its burden of proof by comparing the defendant's substantiation evidence to the available scientific literature). The FTC neither proved that the modified test would not satisfy the scientific community, see id., nor showed that the modified test yielded inaccurate results. Thus, the FTC's substantiation theory fails.

3

The FTC's falsity theory fails for similar reasons. To establish a falsity claim, the FTC must prove: (1) there was a representation; (2) the representation was material; and (3) the representation was likely to mislead a reasonable consumer under the

10

circumstances.[10]  See FTC v. Tashman, 318 F.3d 1273, 1277 (11th Cir. 2003).  The parties do not dispute the R-value representations are material.  First, to show that IDI falsely claimed that its R-values were based on ASTM C518 testing specifically, the FTC needed to establish that the modified test did not comply with ASTM standards, which, for the reasons discussed above, it failed to do.  Second, to show that IDI falsely claimed that scientific tests, generally, supported its R-values, the FTC needed to prove that the modified ASTM C518 unit did not accurately measure Insultex's R-values.  See Pantron, 33 F.3d at 1097 (stating that an efficacy claim is "false" under the FTCA "if evidence developed under accepted standards of scientific research" so demonstrates).  Because the FTC did not demonstrate, through expert testimony or otherwise, that the modified ASTM C518 test resulted in false R-values and did not show that IDI's energy savings claims were therefore false, see 70 Fed. Reg. 31258 (2005), the FTC cannot prove falsity.[11]

III

For the foregoing reasons, we will affirm.

---

[10] Although a party claiming false advertising need not always prove actual falsity, see Am. Home. Prods. Corp. v. FTC, 695 F.2d 681, 683-84 (3d Cir. 1982), here, the FTC's falsity theory is based on its argument that IDI's claimed R-values are false.

[11] Because the FTC did not establish that IDI's R-value and energy savings claims were false or misleading, it cannot establish that IDI's promotional materials were a means and instrumentality to mislead the public.  Cf. FTC v. Five-Star Auto Club, Inc., 97 F. Supp. 2d 502, 530-31 (S.D.N.Y. 2000) (concluding that the defendant provided the public with the means and instrumentalities to deceive others by distributing deceptive marketing materials).